JAMES D. TURNBULL V. ANGUS G. BOGGS ET AL.

*Sale—Inspection of lumber—Proof of conspiracy to defraud— Estoppel.*

1. Plaintiff, a mill-owner, contracted with defendants Holland & Stewart for the sale of 1,700,000 feet of lumber, to be inspected by their co-defendants, and brought suit against *all* of said defendants, claiming a conspiracy on their part to defraud him in the inspection of said lumber, and it is held that the testimony introduced by the plaintiff to show such fraud was competent, and upon its face made out a *prima facie* showing. Said testimony is reviewed in the opinion, to which reference is had.

2. Where a mill owner complained of the inspection of certain cargoes of lumber shipped to the vendees as fraudulent, and accompanied the complaint with the statements of the inspectors, and received and discounted the vendees' notes for the amount shown by the statements, he waived no claim for the lumber fraudulently obtained, if any, through such inspection, having received no more than his own for the lumber which the vendees had confessedly received.

Error to Alpena. (Kelley, J.) Argued November 7, 1889. Decided November 15, 1889.

Case. Defendants bring error. Affirmed. The facts are stated in the opinion.

*George H. Sleator (Depew & Rutherford,* of counsel), for appellants, contended as stated in the opinion, citing no authorities.

*Turnbull & Dafoe,* for plaintiff, contended:

1. The receipt and retention of the fruits of a fraud involve a liability to account for it, although the person so benefited was innocent of personal participation in the wrong; citing *Elwell v. Chamberlin,* 31 N. Y. 611; *Garner v. Mangam,* 93 Id. 643; *Krumm v. Beach,* 96 Id. 398; *Dunn v. Railroad Co.,* 43 Conn. 434; *Hopkins v. Snedaker,* 71 Ill. 449; Cooley, Torts, 147 (note);

and it is elementary that, if the principal retains the fruits of the fraud of his agent, he is liable for the agent's frauds; citing Evans, Ag. (Elwell's ed.) 440; *Bass v. Railway Co.*, 42 Wis. 667.

2. Where a person is defrauded ·in a contract or transaction by another, he can keep what he gets, affirm the contract, and sue for fraud, and his measure of damages will be what he was defrauded out of; citing .*Jewett v. Petit*, 4 Mich. 513; *Walsh v. Sisson*, 49 Id. 424; *Pangborn v. Ins. Co.*, 67 Id. 683; Cooley, Torts, 504.

MORSE, J. The defendants Boggs are lumber inspectors at Alpena, Mich., and the Stewarts and Holland are members of the firm of Holland & Stewart, of Buffalo, N. Y. The plaintiff, who was the owner of, and operating, a saw-mill at the mouth of Long Lake creek, in Alpena county, contracted, on July 16, 1888, with Holland & Stewart to sell them about 1,700,000 feet of lumber. The memorandum of the contract was as follows:

"The said Turnbull sells to said Stewart & Holland all the 4–4, 5–4, 6–4, and 8–4, about 1,700 M., at $7.50 for S. culls, $15.00 for com., and $35 for uppers, and 150,000 M. bill stuff, and 70,000 M. timber, at $8.00 per thousand, on rail of vessel at Turnbull's docks, Alpena county. Terms, 90 days from shipment, or 2 per cent. off for cash. All to be shipped before October 1, 1888. Boggs Bros. to inspect said lumber. Mill culls, six dollars. Balance of logs, if cut so as to ship this year, at same price.                    J. D. TURNBULL.

"*Dated July* 16, 1888.        HOLLAND & STEWART."

About August 6, of the same year, Holland & Stewart sent two vessels to plaintiff's docks, and there was loaded about 625,000 feet, which was measured and inspected by Boggs Bros. When the inspection bills were handed to him, Turnbull found fault with them and told Boggs it was not right. August 7 plaintiff sent a statement, as per Boggs inspection, to Holland & Stewart, requesting them to send notes for the amount of such shipment. He said nothing about the inspection in this letter. The

notes were sent and receipted for by plaintiff, and discounted by him. They were paid at maturity. About August 16, Holland & Stewart sent two more vessels to plaintiff's docks, and they were loaded with about 600,000 feet, measured and inspected by Boggs Bros., or men in their employ, and under their supervision. Turnbull again complained of the inspection, and wrote to Holland & Stewart on August 18 that he was not satisfied with the inspection, and that Boggs and his men were either incompetent or dishonest; that they neither gave the right quantity or quality of lumber; and requested them, as "square business men," to let some one else inspect the balance; saying to them:

"You may name any four first-class inspectors, of Alpena, and I will select two of the four, or I will name four, and you may select the two. All I want is an honest measurement and inspection. I am not getting it."

Holland & Stewart replied August 21 that they would be in Alpena before the next shipment, and see plaintiff personally about the matter; that they would have an inspection made of the lumber last shipped, and, if they found Boggs' inspection right, should not care to change them; that they would have the lumber remeasured and reinspected, and find out for themselves whether there was any foundation to plaintiff's charges.

Plaintiff afterwards received notes for this shipment, which he discounted, and which were paid at maturity by Holland & Stewart. Defendants Holland & Stewart refused to change inspectors, and Turnbull refused to allow them to take away any more lumber.

This suit is brought, claiming a conspiracy of the defendants to defraud the plaintiff. It is alleged by plaintiff that Holland & Stewart falsely and fraudulently represented to him that Boggs Bros. were competent, fair, honest, and trustworthy inspectors of lumber, for the

express purpose of inducing him to consent that Boggs Bros. should inspect said lumber, and that, relying upon such representation, he was induced to so consent, and that the said Holland & Stewart so induced him to consent in order that they might cheat and defraud him in the measurement and inspection of said lumber; that said Boggs Bros. did not inspect the lumber fairly and honestly, but dishonestly, and cheated and defrauded plaintiff out of at least 100,000 feet of lumber in the measurement thereof, and also cheated and defrauded plaintiff in the inspection of said lumber, and in the grading thereof, placing what should have been uppers into common, and classing what should have been common as shipping culls; that their inspection only allowed plaintiff 27,000 feet of good or clear, and 800,000 feet of common, lumber, when there should have been at least 60,000 feet of good, and 1,000,000 feet of common, lumber, if the same had been fairly and honestly inspected; that said Boggs Bros. were employed by Holland & Stewart to inspect said lumber, and to cheat and defraud said plaintiff as aforesaid in the inspection and measurement of the same, and that they have cheated and defrauded him out of at least 30,000 feet of good lumber, and 300,000 feet of common lumber.

This claim of fraud, and damage thereby to plaintiff, was attempted to be shown as follows:

1. By the representations and efforts of Holland & Stewart to obtain plaintiff's consent that the lumber should be inspected by Boggs Bros.

2. By a comparison between the inspection made by Boggs Bros. and that of other competent and honest inspectors, who inspected the lumber left on the docks, and which was claimed to be of the same kind and quality generally as the lumber shipped by Holland & Stewart.

3. By the fact that Holland & Stewart refused to change inspectors after they were made acquainted with the alleged fraud of Boggs Bros.

4. That Boggs Bros. were requested by plaintiff to

employ one Johnson to assist in the inspection and meas-
urement of the lumber, who was a competent and honest
inspector at Alpena; that plaintiff offered to pay said
Johnson for his work, if Boggs Bros. would employ him;
that thay promised to do so, but when the inspection of
the last shipment was made they claimed that Johnson
was drunk as the reason why they did not bring him out
to help inspect the lumber.    Plaintiff saw Johnson same
day, and testified that Johnson was sober.

5. Counting of the courses of the lumber as it was
piled on the docks before it was shipped, and estimates
made therefrom. ·

The testimony in behalf of plaintiff showed that Boggs
Bros' inspection ran $32\frac{1}{2}$ per cent. to shipping culls,
while that of the other inspectors only made about 21
per cent. of such culls; and that between competent and
honest inspectors there ought not to be a variance of
more than from 1 to 3 per cent. in the inspection of the
same lumber.

The defendant denied that there were any representa-
tions made to plaintiff, or any effort of any kind, to
induce him to consent to the inspection by Boggs Bros.
Alleged that they were chosen as much by his suggestion
as that of Holland & Stewart.    They insisted that there
was no fraud in the inspection, and no conspiracy between
them to cheat or defraud plaintiff, and introduced testi-
mony tending to show that the inspection and measure-
ment were competently, fairly, and honestly made.

They also put in the evidence of inspectors tending to
show that the matter of grading the lumber was one
depending a great deal upon the judgment of the
inspector; that the line between good and common, and
between common and shipping culls, in many boards
was very close, and that competent inspectors might fairly
and honestly differ quite a large per cent.—from 3 to 20
per cent.—in such grading; and that there was a great
difference frequently between the inspections, made at

different times, of lumber cut from what was supposed to be the same kind of logs. One inspector testified that he had known his own inspection in the forenoon to vary from his inspection in the afternoon of the same day 10 to 15 per cent. in lumber supposed to be cut from the same logs.

Several prominent and extensive lumbermen in Alpena who had employed Boggs Bros. testified that they, and the men in their employ, were careful, competent, and honest lumber inspectors. Holland & Stewart also testified that they sold the lumber to their customers upon the inspection and measurement made by Boggs Bros. A Buffalo lumber inspector testified that he inspected one of the first cargoes shipped, when it arrived at Buffalo, and made the good and common lumber less than shown by Boggs' inspection, the whole number of feet being about the same. He did not see or know of Boggs' inspection until after he made his own.

The jury returned a verdict in favor of the plaintiff for the sum of $1,000.

The charge of the court was eminently clear and fair, and, as admitted by defendants' counsel, quite favorable to the defendants, as far as it went, in defining the law of the case. But it is claimed that the case should not have been submitted to the jury at all; that there was absolutely no proof of any fraud, and the verdict should have been directed in defendants' favor. If a fraud was perpetrated upon plaintiff, as claimed by him, there would be necessarily no other way of proving it except in the manner in which plaintiff sought to establish it. It would not be likely that plaintiff could produce any direct evidence of the fraud, or the conspiracy by which it was effected. He would in most cases be unable to prove that Holland & Stewart and Boggs Bros. met together and agreed upon and marked out the course of,

the fraud, by any one who heard them talking of the plan. This would be a secret undertaking between them, which must be discovered, if it all, by circumstances, and by the results in the case. It could have been more satisfactorily established if Turnbull could have remeasured and inspected the lumber shipped, but this he could not do without going to Buffalo, and perhaps not then. He took the best method to discover the cheat which was otherwise available to him.

It is contended that he should have demanded a reinspection at Buffalo, which he did not do. But he notified Holland & Stewart of his claim of fraud after the second cargoes were shipped, and they promised a remeasurement and reinspection of such cargoes. They wrote him:

'We, however, will be in Alpena before that time, and will call and see you personally in reference to what you state in your letter. This will give us a chance in the mean time to inspect these two barges, on which you make so much complaint; and if we find that Messrs. Boggs' inspection is right, then we shall not care to change them. We, however, will be able to know better about ten days after the barges get here, as we shall have this lot of yours all inspected and remeasured by that time. I think you will see the justice of this. The only complaints we have ever had about any incompetency of the inspectors have always been from men who are not strictly in the lumber business; but, as you have made a direct charge against these inspectors, we will find out for ourselves, as we can easily see whether there is any foundation or truth in your charges."

But their own testimony shows that they never remeasured or inspected any of the lumber except one of the first cargoes; and it is claimed by Turnbull that the first cargoes were about 3 per cent. nearer correct than the last.

The testimony introduced by the plaintiff to show fraud was competent, and upon its face made a *prima*

*facie* showing. Although, upon the whole case, we might not have reached the same result as the jury did, the facts and circumstances were properly submitted to them, and we cannot disturb their finding.

It is also claimed that the plaintiff was estopped by his conduct in the case from recovering in this action, because he sent the statements of the inspection to Holland & Stewart, and received his pay upon them. This did not estop him. He made his claim of fraud seasonably enough. He received no more than his own when he took and discounted the notes for the lumber which Holland & Stewart confessedly had received. In receiving such payment he waived no claim for the lumber they had fraudulently obtained, if any, and neither of the defendants were induced by his acts to do anything which would authorize them to claim the benefit of an estoppel against their fraud, if any fraud was committed.

We have been unable to find any error in the record, and the judgment is affirmed, with costs.

The other Justices concurred.